(No. 10922.—Reversed and remanded.)

MAUDE B. HELM *et al.* Appellants, *vs.* THE ILLINOIS COMMERCIAL MEN'S ASSOCIATION, Appellee.

*Opinion filed June 21, 1917—Rehearing denied October 5, 1917.*

1. PRACTICE—*when certificate by Appellate Court that a case involves questions of law does not present such questions.* A certificate by the Appellate Court that a case involves questions of law, by reason of principal and collateral interests involved, does not present such questions for the Supreme Court if they are not raised or preserved by any one of the methods prescribed by proper practice.

2. SAME—*motion for a finding for defendant in trial without a jury raises only a question of law.* A motion to find for the defendant in a trial before the court without a jury raises only a question of law as to the sufficiency of the evidence to authorize a recovery, and while judgment for the defendant necessarily follows if the court sustains the motion, yet the allowance of the motion does not settle the issues of fact.

3. SAME—*correct practice where defendant moves for a finding in his favor.* If there is no evidence tending to prove the material facts necessary to sustain the plaintiff's case, a motion by the defendant for a finding in his favor in a trial without a jury should be sustained, but if there is any evidence, although contradicted, which fairly tends to prove the material facts necessary to entitle the plaintiff to judgment the court should overrule the motion, unless there is also uncontradicted evidence that establishes an affirmative defense.

4. SAME—*effect where plaintiff's evidence establishes an affirmative defense.* Where evidence of affirmative defense is found in the plaintiff's evidence it is proper to sustain a motion to find for the defendant even though all the material facts necessary to sustain the plaintiff's case have been proved, provided the evidence of the affirmative defense is not contradicted or explained.

5. SAME—*correct practice where motion to find for defendant is denied.* By denying a motion to find for the defendant, the court, in effect, decides that the plaintiff is entitled to a finding on the questions of fact, and, unless further evidence is introduced, should at once determine the question of the preponderance of the evidence and render judgment; and it is not necessary that either party ask the court to decide the question of fact after overruling such motion.

6. SAME—*if defendant, at close of plaintiff's evidence, desires the court to decide issues of fact the court should be so informed.* In a trial before the court without a jury, if, at the close of the plaintiff's evidence, the defendant does not desire to introduce any evidence and desires the court to take the case on the evidence of the plaintiff, weigh it, and make a finding of the facts and render judgment accordingly, he should plainly so inform the court.

7. BENEFIT SOCIETIES—*non-payment of dues is sufficient ground for declaring a member not in good standing.* Non-payment of dues in a benefit society is sufficient ground for declaring a member not in good standing, and he may be suspended or dropped as a member if the certificate or by-laws so provide.

8. SAME—*a benefit certificate is prima facie evidence of good standing of assured.* In an action by the beneficiary on a benefit certificate, the certificate, with proof of its delivery and of possession from delivery, is evidence of good standing of the assured, and in the absence of proof to the contrary his good standing will be presumed to have continued up to the date of his death, and if non-payment of dues is pleaded as an affirmative defense the defendant must prove it.

9. SAME—*what is due diligence as required in accident insurance certificate.* Whether a person at the time of his accidental injury was using "due diligence for his self-protection," within the meaning of the terms of a benefit certificate, is ordinarily a question of fact, to be determined from all the facts and circumstances in evidence, and is not a question of law unless all reasonable minds would agree on the conclusion to be drawn from such facts and circumstances.

10. SAME—*when question whether traveler on right of way was a trespasser or licensee is not material.* The question whether a traveler who was injured while walking on the right of way of a

railroad was a trespasser or licensee as to the railroad company is not material in a suit against a benefit society on a certificate for accident insurance.

11. SAME—*meaning of words "unnecessarily exposing himself to danger," used in an accident insurance policy.* The words "unnecessarily exposing himself to danger," used among the exceptions from liability in an accident insurance certificate, differ very little in meaning from the expression "due diligence for his self-protection," used in the same connection, and include cases of exposure to unnecessary danger where such exposure is attributable to negligence on the part of the assured.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding.

BULKLEY, MORE & TALLMADGE, for appellants.

RYAN, CONDON & LIVINGSTON, (IRVIN I. LIVINGSTON, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Edgar L. Helm applied for and received an accident insurance policy issued to him by the Illinois Commercial Men's Association, appellee, on November 30, 1909, in which he was insured as a traveling man. One of the provisions of the policy is, "and in case of bodily injury, or injuries received through external, violent and accidental means, which shall, independently of all other causes, result in the death of said member, there shall be payable to Maude B. Helm, wife, and Evelyn Helm, daughter of Edgar L. Helm, * * * the sum of $5000, * * * such payment to be made within ninety days after the receipt by said association of satisfactory proof of the happening of such injury or injuries and the result of such injury or injuries," etc. The assured was instantly killed by a railroad train February 1, 1912. Appellants, the wife and daughter of the assured and the beneficiaries named in said policy,

on March 8, 1913, brought this suit to recover $5000, the
sum named in the policy. The trial was before the court
and without a jury. No written propositions of law were
submitted to the court, but at the close of appellants' evi-
dence appellee moved the court to find for the defendant
and to dismiss the suit at plaintiffs' costs. The court sus-
tained the motion, dismissed the suit and entered judgment
for costs against appellants, and proper exceptions were
taken and preserved by them. An appeal was prosecuted
to Branch "B" of the Appellate Court for the First Dis-
trict. That court, in April, 1916, reversed the judgment of
the municipal court and remanded the cause. A rehearing
was granted, and the judgment of the municipal court was
affirmed in June, 1916. A second rehearing was then al-
lowed, and final judgment was entered by the Appellate
Court affirming the judgment of the trial court June 29,
1916. A certificate of importance was granted for an ap-
peal to this court.

Appellee set up two affirmative defenses in its affidavit
of merits that were relied on in the lower courts and are
relied on in this court as being proved by appellants' evi-
dence: (1) That the deceased was not a member of the
association in good standing at the time of the accident be-
cause of his failure to pay his annual dues on or before
January 2, 1912, as provided by the policy and by-laws;
and (2) that the accident happened (a) while the de-
ceased was not in the exercise of due diligence for his self-
protection, and (b) while he was unnecessarily exposing
himself to danger, within the meaning of exceptions from
liability contained in the by-laws.

The main question raised and argued in this court is
whether or not the trial court erred in sustaining appellee's
motion to find for it and to dismiss the suit at appellants'
costs. In support of the trial court's action appellee argues
that, inasmuch as a jury was waived, the motion of appel-
lee authorized that court to pass on and to determine all

issues of fact as well as all issues of law applicable to the case, under the evidence introduced by appellants. Appellants, on the other hand, contend that the motion of appellee only raised the question of law as to whether or not appellants' evidence fairly tended to prove all of the ultimate facts necessary to entitle them to recover from appellee after considering appellants' evidence most favorable to them, and that the court was not authorized, under the motion, to weigh the evidence and determine the preponderance thereof and to settle the questions of fact. It is necessary for us first to consider these contentions. If appellee's contention is correct the affirmance of the trial court's judgment by the Appellate Court is final, as this court can only review questions of law in this class of cases when brought to it by writ of error or appeal from the Appellate Court and is bound by the finding of the Appellate Court as to the ultimate facts. A certificate by the Appellate Court that a case involves questions of law, by reason of principal and collateral interests involved, does not present questions of law for this court where no question of law is raised or preserved by any one of the methods prescribed by the practice in this State. *Commercial Nat. Bank* v. *Cauniff,* 151 Ill. 329.

We are cited to the cases of *Hayward* v. *Jackman,* 96 Iowa, 77, *Newberger* v. *Keim,* 134 N. Y. 35, and *Lambuth* v. *Stetson & Post Mill Co.* 14 Wash. 187, as authority for the proposition that where the trial is before the court without a jury, such a motion as was made by appellee in the trial court raises both questions of law and fact, and authorizes the court to weigh the evidence and to enter judgment in favor of the party whose contentions are supported by such facts. We have examined those cases and the reasoning advanced by those courts for the holdings therein announced. We must hold that the rules announced in those jurisdictions are inapplicable to the practice in this State as already announced in several decisions of this court.

There is no dispute in this case as to the facts. Appellee introduced no evidence whatever. In a trial before the court without a jury a legal question, only, is raised by demurring to the evidence. The same question may be raised by submitting a proposition to the court or by a motion to find for the party. A motion to find for the defendant and to dismiss the suit at the plaintiff's cost raises the same legal questions as a demurrer to the evidence by the defendant in a trial before the court. (*Conway* v. *Garden City Paving Co.* 190 Ill. 89; *Smith* v. *Billings,* 169 id. 294; *McMicken* v. *Safford,* 197 id. 540.) If the court sustains the motion, judgment necessarily follows in favor of the party making the motion. The motion raises only a question of law as to the legal sufficiency of the evidence to sustain a verdict against the party making the motion. (*Wolf* v. *Chicago Sign Printing Co.* 233 Ill. 501.) If there is no evidence, or but a scintilla of evidence, tending to prove the material ultimate facts necessary to sustain the plaintiff's cause of action, such a motion by the defendant should be sustained; but if there is in the record any evidence, although contradicted, which the court can reasonably say fairly tends to prove all the ultimate facts necessary to entitle the plaintiff to judgment, then the court should overrule the motion, unless there is also uncontradicted evidence in the record that establishes an affirmative defense for the defendant. (*Libby, McNeill & Libby* v. *Cook,* 222 Ill. 206.) Where evidence of an affirmative defense is offered by the plaintiff it is proper to sustain such a motion by the defendant, even though all the material facts necessary to sustain plaintiff's cause of action have been proven, if the evidence of the affirmative defense is not contradicted or explained. (*Wallner* v. *Chicago Consolidated Traction Co.* 245 Ill. 148.) Should such a motion be denied, the court, in effect, by that decision announces that the plaintiff is entitled to have a finding on the questions of fact, and should at once proceed to determine the question of

the preponderance of the evidence unless further evidence is introduced, and render judgment accordingly. It is not requisite, under our practice, that either party should ask the court to decide the question of fact after overruling such a motion where there is no jury, or to submit the case to a jury where a motion for a directed verdict has been overruled. (*Wolf* v. *Chicago Sign Printing Co. supra.*) In a case before a court without a jury, if at the close of the plaintiff's evidence the defendant does not desire to introduce any evidence and desires the court to take the case on the evidence of plaintiff and weigh it and make a finding of the facts and render judgment accordingly, he should plainly so inform the court. The court may then weigh the evidence, determine the question of a preponderance thereof and enter judgment accordingly. If only a motion to find for defendant is made it must be understood that it only raises a question of law, as heretofore explained, and on such a motion the court cannot weigh the evidence and finally settle the issues of fact until the question of law is settled in favor of the plaintiff. If that question of law is not in some way raised and preserved for review by this court this court cannot consider that question of law, however insufficient the evidence might appear to support the judgment of the court. (*Cothran* v. *Ellis,* 125 Ill. 496.) This was evidently the purpose of appellee in making the motion in question, that it might preserve the same for review in this court had the court ruled against it. It is also appellants' right to have that question of law reviewed in this court after first having submitted it to the Appellate Court.

The defense that the assured was not a member of the association in good standing for failure to pay dues was pleaded as an affirmative defense by appellee and is based on the provisions of the by-laws. Appellee, therefore, assumed the burden of proof on that issue. Non-payment of dues is sufficient ground for declaring a member not in good

standing, and for that failure he may be suspended or dropped as a member of a benefit society if the policy or by-laws so provide. Appellants made a *prima facie* case by their evidence on that issue even if it should be held that the burden of proof was on the appellants. The certificate proven to have been in the possession of appellant Maude B. Helm since the date of its delivery was offered in evidence by appellants, with proof that they are the beneficiaries therein named. Appellee admitted that the assured died almost instantly as a result of being struck by a railroad engine between the stations of Walton and Vickers, in Virginia, on the Norfolk and Western railroad. In October, 1911, the assured stood as a suspended member of appellee for failure to pay a two-dollar assessment. On the 12th of that month appellee's secretary, R. A. Cavenaugh, wrote and enclosed to the insured a blank re-instatement card, directing him to fill out and sign and return the card with three dollars; that if he would do so his insurance would be paid up to March 15, 1912, and his annual dues of one dollar would be paid for the year 1912, and that he would be re-instated as a member of appellee in accordance with previous instructions and directions from the board of directors of appellee. The assured's wife answered the letter for him and enclosed two dollars to pay the assessment and signed a card for re-instatement. In reply the assured received from the secretary a receipt for the two dollars, dated November 6, 1911, reciting: "Payment in full for re-instatement to membership in the Illinois Commercial Men's Association. This renews your policy No. 34879." On December 1, 1911, said secretary again wrote the assured a letter referring to him as a member of appellee, notifying him of the annual convention of the association in Chicago on January 13, 1912, and asking him to attend it, if possible, and if he could not, to fill out a blank proxy enclosed, delegating some officer or member of the association to represent him at the convention and to vote for him at

279 — 37

the annual election of officers. Other letters and circulars were addressed to the assured by the secretary after January 2, 1912, and before the death of the assured, recognizing him as a member of appellee. There is no proof in the record that the assured's annual dues payable January 2, 1912, were not paid, or that he was expelled or dropped for non-payment of dues of 1912. A letter of March 8, 1912, by appellee's secretary to appellants' attorneys, stating that the assured's membership lapsed January 2, 1912, for failure to pay his dues, was offered in evidence for the purpose of showing appellee's position in regard to payment of the policy, with the express limitation that the truth of its contents was not admitted by appellants. This letter simply obviated the necessity of appellants' proving the furnishing of proofs of death to appellee. In an action on a benefit certificate or policy of insurance by the beneficiary, the certificate or policy, with proof of its delivery and possession from delivery, is evidence of good standing of the assured, and in the absence of proof to the contrary his good standing will be presumed to have continued up to the date of the accident. (2 Bacon on Life and Accident Insurance,— 4th ed.—sec. 579.) Appellants having made a *prima facie* case and without establishing the affirmative defense of appellee, appellee was bound to furnish the proof that the assured was not a member in good standing, as alleged in its defense.

Presumably to prove that the assured was killed by an accident, appellants offered the following evidence, which appellee claims established the second affirmative defense pleaded by it: The assured was walking west on the south ends of the ties just south of the south rail of the west-bound track of the railway between Vickers and Walton. He had just crossed a trestle or railway bridge, and a freight train was passing him on his left, on the east-bound track, at the time he was discovered by the fireman of a west-bound passenger train going at a speed of from forty to

forty-five miles an hour and about three hundred feet east of the assured. The engineer did not see the deceased before he was killed. The fireman testified that the accident happened on a long, "stiff" curve, and that he was prevented from seeing the deceased sooner because his view was cut off by the freight train, and that it could not have been over five seconds from the time he first saw the deceased until he was struck by the passenger train; that the east and west-bound tracks there were about five feet apart and that he had seen people step in safety between the tracks there; that many women and men, including traveling men, traveled the railroad track between Vickers and Walton; that there was no public highway between said two places and that the passenger train did not stop at Vickers; that the deceased was walking westward,—the same direction the passenger train was going,—and appeared to be carrying his grip on his back, with his head bent over and with his hands in his pockets; that a cold wind was blowing at the time; that no whistle was blown on the engine of the passenger train; that although the bell was ringing it did not ring very well, and that there was much noise at that time because of the passing freight train; that the witness, because of the exhaust steam of his engine, was unable to see whether or not the deceased looked in the direction of the passenger train approaching him from the rear; and he further testified that there was room on the south side of the north or west-bound track for one to travel in safety.

Appellants introduced the by-laws of appellee bearing on its said affirmative defenses, providing: "Any member failing to pay his annual dues when the same are due and payable shall cease to be a member of the association, and no person shall or may be re-instated as a member hereof except by the board of directors, or a duly constituted committee thereof, on terms to be prescribed by the said board of directors." "This association shall not be liable to any person for any indemnity or benefit for injury or death

* * * resulting from an accident to a member which happened while said member was unnecessarily exposing himself to danger (or) was not in the exercise of due diligence for his self-protection."

Appellee had the burden of proof, and it was incumbent on it to establish its second affirmative defense by a preponderance of the evidence. The by-laws were a part of its proof, but the introduction thereof by appellants, together with the other proof offered by them, does not establish the affirmative defenses of appellee unless we can say, as a matter of law, that appellants' proof established its said defenses. Appellants unquestionably made a *prima facie* case which entitled them to recover unless the affirmative defenses, or one of them, have also been established by appellants' proof. The real question is, does the evidence in the record legally tend to sustain a verdict against appellee?— or, rather, is there evidence in the record legally tending to sustain a verdict against it? (*Wallner* v. *Chicago Consolidated Traction Co. supra.*) If the evidence, with all reasonable inferences to be drawn therefrom, taken most strongly against appellee, fairly tends to support a finding for appellants, then this question must be answered in favor of appellants.

In construing this same provision, this court, in *Tinsman* v. *Illinois Commercial Men's Ass'n*, 235 Ill. 635, said the question whether one is exercising due diligence for his safety is one of fact for the jury, where the facts and circumstances in evidence are not such that all reasonable minds would necessarily agree that an ordinarily prudent man would not have acted in like manner at the time of the accident. The assured in this case, as shown by the evidence, was only one step to safety. By stepping into the center of the space between the two tracks he would not have been injured by either train. The evidence also shows that many other persons had traveled the same right of way between the two towns. Whatever other persons might

do in the exercise of ordinary care is within the limits of due diligence. We would not be warranted in saying, as a matter of law, that the assured was unnecessarily exposing himself to danger or was not exercising due diligence in traveling the right of way between the two towns when many other persons have been proven to have done the same thing. The evidence does not disclose that the railway company had forbidden travel on its right of way, and the question whether or not he was a trespasser or a licensee as to the railroad company can have no important bearing in this case. He was not a trespasser as against appellee, and the cases bearing on the liability of a railway company to a trespasser on its right of way are not applicable in this case. The assured had evidently just crossed the bridge on the west-bound track and was walking on the ends of the ties to the south to avoid the freight train, which was making so much noise while crossing the trestle that he did not hear the passenger train until it was too late. The passenger engine did not whistle and the bell did not ring very loud. The deceased, no doubt, counted on being able to hear any train coming from behind him in plenty of time to step to safety. He could not take the passenger train at Vickers, which further explains his presence on the right of way. We are unable to say, as a matter of law, that the assured was not in the exercise of due diligence for his self-protection at the time he was killed by the train.

The words in the policy, "unnecessarily exposing himself to danger," are very little different in meaning from the due diligence clause. Those words simply include all cases of exposure to unnecessary danger where such exposure is attributable to negligence on the part of the assured. *Pacific Mutual Life Ins. Co.* v. *Adams,* 112 Pac. Rep. (Okla.) 1026. See, also, *Keene* v. *New England Mutual Accident Ass'n,* 161 Mass. 149; *Kentucky Accident Ins. Co.* v. *Franklin,* 43 S. W. Rep. 709; *Powell* v. *Travelers' Protective Ass'n,* 140 S. W. Rep. (Mo.) 939.

.The Appellate Court erred in holding, as a matter of law, that the assured violated the conditions of the policy, and in affirming the judgment of the trial court. The judgment is therefore reversed and the cause remanded to the municipal court for further proceedings.

*Reversed and remanded.*